UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHIRLEY A. TRICE,<br>        Plaintiff, ) ) ) | |
| vs. ) | 1:09-cv-00561-LJM-JMS |
| ) MICHAEL J. ASTRUE, Commissioner ) of the Social Security Administration, ) Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Shirley A. Trice ("Trice"), requests judicial review of a final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), who found that Trice was not entitled to a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income. The Court rules as follows.

## I. BACKGROUND

Trice was born on September 24, 1951; she was fifty-seven years old at the time of the Commissioner's final decision. R. at 56. Trice is a high school graduate. R. at 147, 397. Her past relevant work was as a personnel clerk and medical secretary. R. at 398-404. Trice claims she became disabled on May 31, 2005, the date Trice's employer asked her to resign her position instead of terminating her employment. R. at 12, 418-19. Trice claims she suffers from dibilitating pain throughout her body and fatigue caused by fibromyalgia that precludes her ability to return to work. R. at 406-09.

Trice claims that she has suffered from general aches and pain for thirty years,

which gradually progressed in intensity. R. at 408. Suspecting these aches and pains were caused by fibromyalgia, Robin Schaffer, a Nurse Practitioner, referred Trice to Dr. Syed Hasan ("Dr. Hasan"), a rheumatologist. R. at 165-66. On October 21, 2004, Dr. Hasan diagnosed Trice with fibromyalgia, noting "[m]ultiple soft tissue tender points." *Id.* Dr. Hasan recommended that Trice get regular exercise and continue her current medications, which included nortriptyline, Prozac, diclofenac, and Flexeril.

On January 11, 2005, Trice saw Dr. Hasan for a scheduled followup. R. at 164. Dr. Hasan noted that Trice's fibromyalgia was stable and did not change her medication regimen. *Id.* On March 10, 2005, Trice returned to Dr. Hasan complaining of increased pain. R. at 163. Dr. Hasan noted that Trice looked depressed and that she had stopped taking Prozac. *Id.* Dr. Hasan restarted Trice on Prozac and proscribed Vicodin to help her deal with the pain. *Id.* Dr. Hasan instructed Trice to return for a followup appointment in six weeks. *Id.*

On May 17, 2005, Dr. Javeed Ahmed ("Dr. Ahmed"), a colleague of Dr. Hasan's, examined Trice during her followup appointment. R. at 162. Dr. Ahmed noted that Trice complained of depression, fatigue, and severe pain in her left shoulder. *Id.* Dr. Ahmed diagnosed the shoulder pain as being caused by bursitis and treated it with an injection of Kenalog. *Id.* Dr. Ahmed also increased Trice's prescription for nortriptyline and added tramadol to help control her pain. *Id.*

On June 30, 2005, Trice returned to Dr. Hasan for another scheduled followup appointment. R. at 161. Dr. Hasan noted that Trice complained of back pain and an inability to sleep. *Id.* In addition, Trice told Dr. Hasan that she was unable to work and,

consequently, lost her apartment. *Id.* Dr. Hasan proscribed Lunesta to help Trice sleep but did not change any of her other medications. *Id.*

On September 8, 2005, Trice returned to Dr. Hasan for another scheduled followup appointment. R. at 156. Trice had already discontinued using Lunesta, claiming that it was ineffective at helping her sleep. *Id.* Dr. Hasan increased her Flexeril prescription but did not change any of her other medications. *Id.* Trice informed Dr. Hasan that she wished to apply for disability. *Id.*

On October 20, 2005, Trice returned for another scheduled followup appointment. R. at 159. Dr. Hasan recommended that Trice discontinue Flexeril, fearing that she was "taking too much of the medication," and instead started her on Ambien. *Id.* Dr. Hasan also suggested that Trice stop taking Vicodin. *Id.*

On October 26, 2005, Dr. Brad Johnson ("Dr. Johnson") performed a comprehensive psychiatric evaluation on Trice. R. at 219-21. Dr. Johnson found that Trice could perform simple and repetitive tasks. R. at 221. Dr. Johnson also concluded that Trice could perform detailed and complex tasks, accept instructions from supervisors, deal with the usual stress encountered in competitive work, and complete a normal work-week without interruptions from a psychiatric condition. *Id.*

On November 1, 2005, Dr. Juliane Tran ("Dr. Tran") performed a comprehensive orthopedic evaluation on Trice. R. 215-18. Dr. Tran noted that Trice had "some areas of pain that [are] consistent with fibromyalgia." R. at 217. Dr. Tran's functional assessment noted that Trice "would be restricted with activities involving lifting more than 100 pounds occasionally or more than 50 pounds frequently." R. at 218. Dr. Tran observed no

restrictions with activities involving fingering, grasping, overhead reaching, climbing, balancing, sitting, or standing. *Id.*

On December 19, 2005, Dr. George Bugg ("Dr. Bugg") completed a Physical Residual Functional Capacity Assessment of Trice. R. at 207-14. Dr. Bugg determined that Trice could occasionally lift or carry 100 pounds, frequently lift or carry fifty pounds, stand or walk six hours in an eight hour workday and sit six hours in an eight hour workday. R. at 208. Dr. Bugg did not observe any postural or manipulative limitations. R. at 209-10.

Trice continued followup appointments with Dr. Hasan or Dr. Ahmed every four to six weeks. *See* R. at 153-55, 158. On February 8, 2006, Trice complained of "worsening joint pain and swelling" as well as migraine headaches. R. at 154. But on March 1, 2006, Dr. Ahmed noted that Trice was "doing much better" and that her "fibromyalgia is doing fairly well at this time." R. at 153. As a result, Dr. Ahmed recommended a followup visit in two months. *Id.*

At some time during the Spring or Summer of 2006, Trice moved from California to Indiana. R. at 379, 397. On August 2, 2006, Trice visited Dr. John Hague ("Dr. Hague"), a rheumatologist who practices in Indianapolis, Indiana, for an initial rheumatologic evaluation. R. at 379. Dr. Hague concurred that Trice was suffering from fibromyalgia, noting all eleven points tested were tender. R. at 381. Dr. Hague increased Trice's Cymbalta prescription and requested that Trice followup in two to three months. *Id.*

On September 27, 2006, Trice visted Dr. Amy Villavicencio ("Dr. Villavicencio") to establish a primary care physician in Indiana. R. at 362. Dr. Villavicencio recommended that Trice continue to treat her migraine headaches with Excedrin Migraine and refilled her

Prozac prescription. R. at 364. Dr. Villavicencio also recommended that Trice continue to see Dr. Hague for her fibromyalgia. *Id.*

On October 31, 2006, Trice had her first followup examination with Dr. Hague. R. at 372. Dr. Hague noted that Trice had improved in several respects since the first visit, but still awakened unrested and required two or three naps each day. *Id.* Dr. Hague recommended that Trice speak with a mental health professional to determine whether there was a psychological basis for her "excessive daytime sleepiness." *Id.*

On May 22, 2007, Dr. Hague examined Trice and noted a turn for the worse. R. at 373. Trice reported that she had four or five episodes of flushing, palpitation, and lightheadedness over a period of three months. *Id.* Dr. Hague noted that these episdoes could be a side effect of Cymbalta and recommended that Trice discontinue the drug. *Id.* Dr. Hague asked Trice to return in six months for followup appointment. *Id.*

On November 20, 2007, Trice visited Dr. Hague for the scheduled followup. R. at 365. Dr. Hague noted that Trice's condition was relatively stable. *Id.* Trice reported that the episodes she had complained of at her previous visit decreased in frequency after she stopped taking Cymbalta. *Id.* Dr. Hague described Trice's sleep issues as "paramount in her case" but made few changes in treatment. *Id.*

On May 20, 2008, Trice visited Dr. Hague for another scheduled followup appointment. R. at 389. Dr. Hague refilled Trice's precriptions for Vicodin and Flexeril but noted that Trice was having trouble affording her medications. *Id.* Dr. Hague also recommended that Trice spend time exercising. *Id.*

On October 4, 2008, Trice visited Dr. Villavicencio. R. at 385. Trice told Dr. Villavicencio that her pain had increased and expressed a desire to see Dr. Hague again

before her disability hearing that was scheduled for November 11, 2008. *Id.* In response, Dr. Villavicencio sent Dr. Hague a note requesting an earlier appointment for Trice. *Id.*

Trice applied for DIB on August 5, 2005, claiming that she became disabled on May 31, 2005. R. at 139. After her initial application and request for reconsideration were denied, Trice requested a hearing before an Administrative Law Judge (the "ALJ"). R. at 12. On November 6, 2008, Trice appeared with counsel at an administrative hearing before the ALJ. R. at 12, 393. Dr. Arthur Lorber ("Dr. Lorber"), a board-certified orthopedic surgeon, testified as an impartial medical expert regarding Trice's musculoskeletal impairments. R. at 12, 428-38. Stephanie Archer ("Archer"), a certified rehabilitation counselor, testified as an impartial vocational expert. R. at 12, 438-43.

The ALJ questioned Trice about her physical condition and medications. R. at 406-09. Trice described her pain as constant but "different every day." R. at 406. Trice explained that her muscles, bones, and joints all hurt and stated that the pain moves around the body. R. at 406-07. Trice said that she had lived with this pain for thirty years but explained that "it got to where it, the pain, would just never go away." R. at 408. Trice described the pain as a seven or eight on a scale of ten. R. at 409. Trice stated that she treats the pain with Vicodin and Flexeril. R. at 408-09. In addition, Trice testified that she was taking Paxil to treat her depression. R. at 418. Trice also testified that she falls to the ground about two or three times per week and that this has occurred for the past couple years. R. at 425.

Trice testified that her doctors had recommended exercise to help relieve her pain and that she used a stationary bike about three times per day for approximately five minutes each time. R. at 411-13. Trice also testified that she did exercises in the pool and

went on walks. *Id.* In addition, Trice testified that she regularly cleaned her room, played games and researched on the computer, and had read three books on fibromyalgia. R. at 414-16.

Dr. Lorber testified that Trice's degenerative disc disease was not severe and should not preclude her from work activities. R. at 434. Dr. Lorber testified that, based on the medical records, he believed Trice "could function at a medium level of activity" and required no "exertional, environmental, or manipulative restrictions." R. at 435. Dr. Lorber's assessment, however, did not take into consideration Trice's fibromyalgia. R. at 438.

Archer testified that Trice's past work experience as a personnel clerk would be classified as semi-skilled, sedentary work. R. at 439. Similarly, Archer testified that Trice's past work as a medical secretary would be classified as skilled, sedentary work. R. at 440. The ALJ asked Archer whether an individual who can occasionally lift twenty pounds and frequently ten pounds, who can sit for six hours in an eight-hour workday, and who can only stand or walk for two hours in an eight-hour workday, can perform either of the jobs previously held by Trice. R. at 442. Archer testified that such an individual could perform either of the jobs previously held by Trice. R. at 443.

On November 28, 2008, the ALJ decided that Trice was not disabled. R. at 21. On March 4, 2009, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Trice's request for review. R. at 5. Pursuant to 42 U.S.C. § 405(g), Trice filed this civil action for judicial review of the Commissioner's final decision.

## II. **DISABILITY AND STANDARD OF REVIEW**

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). In determining whether a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. §405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g.*,

*Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id.* While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. DISCUSSION

#### A. THE ALJ'S FINDINGS

The ALJ found that Trice had not engaged in substantial gainful activity since May 31, 2005, and, therefore, Trice satisfied step one of the five step evaluation procedure for analyzing disability claims. R. at 14. At step two, the ALJ determined that Trice's fibromyalgia was a severe impairment. *Id.* At step three, the ALJ determined that Trice's fibromyalgia was not an impairment that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix. R. at 17.

Between steps three and four, the ALJ determined that Trice had a residual functional capacity that would allow her to lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. *Id.* The ALJ determined that Trice could stand or walk a total of six hours in an eight-hour day and sit for the same duration. *Id.* The ALJ also determined that Trice's claim of disabling pain from fibromyalgia was not credible. R. at 18.

At step four the ALJ determined that Trice was capable of performing her past relevant work. R. at 20. Therefore, the ALJ concluded that Trice was not disabled. R. at 21.

## B. TRICE'S ARGUMENT ON APPEAL

Trice argues on appeal that the ALJ's conclusion that Trice is not disabled is not supported by substantial evidence. Specifically, Trice argues that the ALJ's credibility determination is not supported by substantial evidence.

Credibility must be considered "[w]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence." SSR 96-7p. When weighing the credibility of Trice's claims of debilitating pain, the ALJ must consider seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) additional treatment for pain, other than medication; (6) any measures other than treatment to relieve pain; and (7) any other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3); SSR 96-7-p.

The ALJ addressed each of the seven factors in her opinion. R. at 18-20. When considering Trice's daily activities the ALJ noted that Trice does aquatic exercises, rides a stationary bike, and takes walks in the neighborhood. R. at 18. In addition, the ALJ noted that Trice can "accomplish all her personal activities, cook, do light housework, drive, shop and take care of a pet." *Id.*

When considering the location, duration, frequency, and intensity of pain or other symptoms, the ALJ noted that Trice claimed she fell two or three times per week and that

this occurred for the previous "couple of years." *Id.* Yet, the ALJ noted that Trice never broke any bones from these alleged falls and that her doctors never ordered x-rays following an alleged fall. *Id.* The ALJ found that Trice experienced some pain as a result of her fibromyalgia, but not disabling pain. R. at 19.

When considering factors that precipitate and aggravate the symptoms the ALJ noted that Trice's description of the pain was "quite vague and general, lacking the specificity which might otherwise make it more convincing." *Id.* In addition, the ALJ noted that Trice "has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present 'constantly' or all of the time." *Id.*

When considering the type, dosage, and effectiveness of Trice's medications, the ALJ noted that Trice is taking Vicodin, "a mild narcotic pain medicine." The ALJ expressed doubt that Trice's prescribed dosage of pain medication supports allegations of disabling pain. *Id.*

When considering treatment other than medication, the ALJ noted that Trice has not "received the type of medical treatment one would expect for a totally disabled individual." *Id.* The ALJ noted that Trice sees her rheumatologist, Dr. Hague, only about once every five months. *Id.* Similarly, the frequency with which Trice visits Dr. Villavicencio does not support a claim of disabling pain. *Id.* The ALJ also referenced a self-assessment form completed by Trice at Dr. Hague's request in which Trice characterized her condition as "stable" with "only slight functional limitations." *Id.*; *see also* R. at 366-71.

When considering measures other than treatment that Trice used to relieve pain, the ALJ noted that Trice rides a stationary bike, does aquatic exercises, and walks. R. at 19.

Finally, when considering other factors concerning Trice's functional limitations, the ALJ recognized that Trice's "allegedly disabling impairment was present at approximately the same level of severity prior to the alleged onset date." R. at 20. The ALJ reasoned that if Trice could work with this pain previously, she should be able to work with it currently. *Id.*

During the hearing before the ALJ, Trice's attorney correctly observed that "it's going to boil down to . . . how the [ALJ] feels [about] fibromyalgia." R. at 441. Trice's argument on appeal is focused on the amount of evidence presented and how, according to Trice, it should have been interpreted by the ALJ. Nevertheless, the question for the Court is whether the ALJ's decision regarding Trice's credibility is supported by substantial evidence. The ALJ analyzed Trice's claim of disabling pain by considering the facts pertinent to each of the seven factors listed in Social Security Ruling 96-7p. As outlined above, substantial evidence supports the ALJ's conclusion that Trice's claim of disabling pain is not credible.

## V. CONCLUSION

For the foregoing reasons, the final decision of Michael J. Astrue, the Commisioner of the Social Security Administration, is **AFFIRMED**.

IT IS SO ORDERED this 1st day of June, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

James F. Roth
ROTH LAW OFFICE
jim@jimrothlaw.com